**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| IN RE:<br><br>JOE JESSE MONGE and<br>ROSANA ELENA MONGE,<br><br>Debtor. | Case No. 09-30881<br><br>Small Business Case Under Chapter 11 |

<u>**JOE JESSE MONGE AND ROSANA ELENA MONGE'S DISCLOSURE STATEMENT,
DATED 5/10/2010**</u>

*Table of Contents*

I.  INTRODUCTION ................................................................................................... 4
    A.  Purpose of This Document ........................................................................ 4
    B.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing .... 4
        1.  *Time and Place of the Hearing to Confirm the Plan* ............................. 5
        2.  *Deadline For Voting to Accept or Reject the Plan* ................................ 5
        3.  *Deadline For Objecting to the Adequacy of Disclosure and Confirmation*
            ................................................................................................. 5
        4.  *Identity of Person to Contact for More Information* ............................. 5
    C.  Disclaimer .................................................................................................. 6

II. BACKGROUND .................................................................................................. 6
    A.  Description and History of the Debtor's Business ..................................... 6
    B.  Insiders of the Debtor ................................................................................. 6
    D.  Events Leading to Chapter 11 Filing .......................................................... 6
    E.  Significant Events During the Bankruptcy Case ........................................ 6
    F.  Projected Recovery of Avoidable Transfers ............................................... 7
    G.  Claims Objections ...................................................................................... 7
    H.  Current and Historical Financial Conditions ............................................... 7

III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 1**

       **CLAIMS AND EQUITY INTERESTS**
............................................................................................................................................ 7
- A.    What is the Purpose of the Plan of Reorganization? ....................................... 7
- B.    **Unclassified Claims** ............................................................................................ 7
  - 1.    *Administrative Expenses* ............................................................................ 8
  - 2.    *Priority Tax Claims* .................................................................................... 8
- C.    **Classes of Claims and Equity Interests** ............................................................ 9
  - 1.    *Classes of Secured Claims* ........................................................................ 9
  - 2.    Classes of Priority Unsecured Claims ....................................................... 9
  - 3.    *Class of General Unsecured Claims* ....................................................... 14
  - 4.    *The Debtors Interest In Property Of The Estate* .................................... 14
- D.    **Means of Implementing the Plan** .................................................................. 14
  - 1.    *The future income of the Debtors* ........................................................... 15
- E.    **Risk Factors** .................................................................................................... 15
- F.    **Executory Contracts and Unexpired Leases** ................................................. 15
- G.    **Tax Consequences of Plan** ............................................................................. 16

IV.    **CONFIRMATION REQUIREMENTS AND PROCEDURES** ................................. 16
- A.    **Who May Vote or Object** ............................................................................... 16
  - 1.    *What Is an Allowed Claim or an Allowed Equity Interest?* ..................... 17
  - 2.    *What Is an Impaired Claim or Impaired Equity Interest?*
................................................................................................................. 17
  - 3.    *Who is **Not** Entitled to Vote* .................................................................. 17
  - 4.    *Who Can Vote in More Than One Class* ................................................. 18
- B.    **Votes Necessary to Confirm the Plan** ........................................................... 18
  - 1.    *Votes Necessary for a Class to Accept the Plan* ..................................... 18
  - 2.    *Treatment of Nonaccepting Classes* ....................................................... 19
- C.    **Liquidation Analysis** ...................................................................................... 19
- D.    **Feasibility** ....................................................................................................... 19
  - 1.    *Ability to Initially Fund Plan* .................................................................. 19
  - 2.    *Ability to Make Future Plan Payments and Operate Without Further Reorganization*
................................................................................................................. 19

V.    **EFFECT OF CONFIRMATION OF PLAN** ............................................................ 20
- A.    **Discharge of Debtor** ....................................................................................... 20
- B.    **Modification of Plan** ...................................................................................... 20
- C.    **Final Decree** ................................................................................................... 20

VI.    **OTHER PLAN PROVISIONS** ................................................................................. 21

**I.     INTRODUCTION**

This is the disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of Joe Jesse Monge and Rosana Elena Monge (the "Debtors").  This Disclosure Statement contains information about the Debtor and describes the First Amended Plan Of Reorganization (the "Plan") filed by the Debtors on 5/7/2010.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed at pages 4 - 13 of this Disclosure Statement.  General unsecured creditors are classified in Class - 11, and will receive a distribution of 100% of their allowed claims, to be distributed as follows: Sixty Nine equal monthly installment starting the first day of the month following the Effective Date, payable pro rata .

**A.     Purpose of This Document**

This Disclosure Statement describes:

The Debtors and significant events during the bankruptcy case,
How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
Who can vote on or object to the Plan,
What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
Why Joe Jesse Monge and Rosana Elena Monge believes the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in liquidation, and
The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 3**

1. *Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will take place on June _____ 2010, at _____, in the United States Bankruptcy Courtroom, located at the 8515 Lockheed, El Paso, Texas 79925.
.

2. *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to:

> Sidney J. Diamond, P.C.
> 3800 N. Mesa Street
> Suite C-4
> El Paso, TX 79902
> 915-532-3327     Voice
> 915-532-3355      Fax
> sidney@sidneydiamond. com.

See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by June \_\_\_, 2010 or it will not be counted.

3. *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon Sidney J. Diamond, at the address stated above by June \_\_\_, 2010.

4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact

> Sidney J. Diamond
> 3800 N. Mesa St
> Suite C-4

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 4**

El Paso, Tx 79902
915-532-3327
915-532-3355
sidney@sidney Diamond.com.
.

    **C.**    **Disclaimer**

*The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

**II.**    **BACKGROUND**

    **A.**    **Description and History of the Debtor's Business**

The Debtors are individuals and are not engaged in business. Mr. Monge is 100% disabled. His only income are his veterans benefits and social security due to his disability. Mrs. Monge is a nurse practioner who works for the V.A. Mrs. Monge is also attending medical school and will graduate this May. Assuming she passes her medical boards, she will then have to complete her internship and residency, which will cause some drop in her income, the foregoing will take about two years to complete.

    **B.**    **Insiders of the Debtor**

    None

    **D.**    **Events Leading to Chapter 11 Filing**

The events leading to the filing of this Chapter 11 Case arose from a number of business dealings between the Debtors and third parties, in which the Debtors lost a significant amount of money. The Debtors assert they were defrauded.

    **E.**    **Significant Events During the Bankruptcy Case**

There have been no significant events in this Chapter 11 Case

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 5**

### F. Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### G. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H. Current and Historical Financial Conditions

The identity and fair market value of the estate's assets as listed in Exhibit B, which are the Debtors best estimate of values.

The Debtor's most recent financial statements if any issued before bankruptcy, each of which was filed with the Court, are set forth in Exhibit C.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case are set forth in Exhibit D. A summary of the Debtor's periodic operating reports filed for the month of October 2009 forward is set forth in Exhibit D.

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

Certain type of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 6**

required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

    1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Attorney and Accountant For Debtor | $15,000,00 | 12 equal monthly installments Beginning the first day of the month following the Effective Date |

    2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Service Income Taxes | $41,758.87 | Paid in full in 60 equal monthly installments of |

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 7**

|  |  |  |
|---|---|---|
|  |  | principal and interest beginning the first day of the Month following the Effective Date with interest thereon at the rate of 4% |
| State of New Mexico Income Tax | $9,833.52 | Paid in full in 60 equal monthly installments of principal and interest beginning the first day of the Month following the Effective Date with interest thereon at the rate of 4% |

    **C.**    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

    1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

    2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 8**

However, a class of holders of such claims may vote to accept a different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| Class - 1 | City of El Paso Tax Assessor/Collector | No | Yes | The Allowed Secured Claim Of The City Of El Paso is secured by a first lien on the real property and all improvements located at 51 Sierra Crest, El Paso, Texas. The property will be surrendered on the Effective Date in full satisfaction of its claim. The mortgage holder will be required to pay such claim in order to gain clear title to the property or it will lose its interest in a foreclosure suit that will be brought by the taxing authority. |
| Class - 2 | BAC Home Servicing, LP | No | Yes | The Allowed Claim Of BAC Home Servicing LP is secured by the real property and all improvements located at 51 Sierra Crest, El Paso, Texas. The property will be surrendered on the Effective Date in full satisfaction of it Claim. |
| Class - 3 | BAC Home Servicing, LP | No | Yes | |

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 9**

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  | The Debtors will file an adversary proceeding to establish their ownership of the property located at 105 Thorough Bred Court. The adversary also seeks eviction of the present occupant and damages in the form of rent. Upon the entry of a final non-appealable order establishing the Debtors ownership, evicting the present occupant the allowed Secured Claim will first be paid by paying all sums of money collected from the Defendant to BAC. The remaining balance shall be paid in 360 equal monthly installments of principal and interest, with interest thereon at the rate of 4.5 beginning the first day of the month following the conditions having been met as set forth above. If the above conditions are not satisfied the property will returned to the claimant in full satisfaction of their claim. |
| Class - 4 | Dona Ana County | No | Yes | The tax authority has filed two claims, one in the amount of $8,831.38 and one in the amount of $6,820.52. The first of the claims is filed against a corporation that owned the real property located NM and the second of which is commonly |

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 10**

| | | | | |
|---|---|---|---|---|
| | | | | known as Country Cove Towhouses against the same property. The property has been foreclosed upon during which process the taxes were paid in full. The Debtor will object to these claims. To the extent that the claimant has an allowed claim it will be paid in 60 equal monthly installments of principal and interest, with interest at the rate of 4% beginning the first day of the month following the Effective Date. |
| Class - 5 | Teachers Federal CC | No | Yes | The Allowed Secured Claim of El Paso Area Teachers Federal CU is presently being paid by Mr. Monge disability insurance. It is anticipated that this claim will continue to such claim until it is paid in full |
| Class - 6 | Hudspeth County | No | Yes | The Allowed Secured Claim Of Hudspeth Appraisal District in the amount of $110.54 shall be paid in full on the Effective Date. |
| Class - 7 | Onyx | No | Yes | The Debtors will object to this claim as having been paid in full. To the extent that this claimant has an allowed |

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 11**

| | | | | |
|---|---|---|---|---|
| | | | | secured claim it will be paid in 60 equal monthly installments of principal and interest, with interest at the rate of 5.25% beginning the first day of the month following the Effective Date. |
| Class - 8 | State of New Mexico | No | Yes | The allowed secured claim will be paid in 60 equal monthly installments of principal and interest, with interest at the rate of 4% beginning the first day of the month following the Effective Date. |
| Class - 9 | Metal Building | No | Yes | This claim is believed to be Unsecured and the Debtors will object to the claim on that basis and will further object to the claim on the basis they are not indebted to the claimant. To the extent that the claimant has an allowed Unsecured Claim it will be paid in 120 monthly installments of principal and interest, with interest thereon at the rate of 4% beginning the first dat of the month following the Effective Date. |
| Class - 10 | Vacation Break | No | Yes | The allowed secured claim |

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 12**

|  |  |  |  | will be paid in 120 equal monthly installments of principal and interest, with interest at the rate of 5.25% beginning the first day of the month following the Effective Date. |

3. *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 11, which contain general unsecured claims against the Debtors:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Class - 11 | General Unsecured Claims total $77,456.37 | Impaired | Will be paid 100% of each unsecured creditors allowed claim in 96 equal monthly installments, pro-rata of $806.84 beginning the first day of the month following the effective date. |

4. *The Debtors Interest In Property Of The Estate*

*The Debtors shall retain their interest in property of the estate.*

**D.     Means of Implementing the Plan**

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 13**

      1.    *The future income of the Debtors*

Payments and distributions under the Plan will be funded by the following:

The future income of the Debtors

**E.    Risk Factors**

The proposed Plan has the following risks:

Mr. Monge is disabled and can not work and therefore will contribute very little to funding the plan.
Mrs. Monge is currently employed the V.A. as a nurse practioner. She is also attending medical school, from which she will graduate in May of this year. Mrs. Monge must thereafter complete her internship and either advance at the V.A. or establish her own medical practice.

**F.    Executory Contracts and Unexpired Leases**

The Plan, in Exhibit 5.1, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Exhibit 5.1 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 5.1 will be rejected under the Plan. Consult your advisor or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 14**

G.  **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following are the anticipated tax consequences of the Plan: It is not practical nor is it intended by this general discussion to present herein a detailed explanation of the Federal Income Tax aspects of this Plan . In addition, although the following discussion is based upon the relevant provisions of the Internal Revenue Code of 1954, as amended (the "Code"), regulations promulgated by the Internal Revenue Service pursuant to the Code ("Regulations") the Bankruptcy Tax Act of 1986 (as amended), the Revenue Reconciliation Act of 1993, the Economic Growth and Tax Reconciliation Act of 2001, the Jobs and Growth Tax Relief Reconciliation Act of 2003 and judicial administrative interpretations thereof presently in effect, in some cases the proper interpretation of such authority or their application to particular factual situations is unclear. Moreover, each Creditor is cautioned that this discussion is based in part on the provision of the Tax Reform Acts of 1984, 1986, 1993, 2001 and 2003 which have been enacted into law, and as to which, there are, to date, varying judicial or administrative interpretations. As a result of the foregoing, under current law, there is substantial uncertainty surrounding many of the tax consequences applicable to the various payments to be made under this Plan . Additionally, Creditors are further advised that no ruling has been requested or obtained from the Internal Revenue Service (the "IRS") nor has an opinion of counsel been obtained by the Debtors with respect to the tax aspect of this Plan . For all of the foregoing reasons and because the Federal Income Tax consequences of this Plan will depend in part upon certain factual matters unknown to the Debtors relating to each particular creditor, EACH CREDITOR IS URGED TO SEEK ADVICE FROM HIS OR ITS OWNTAX ADVISER WITH RESPECT TO THE FEDERAL INCOME TAX CONSEQUENCES OF THIS PLAN , AND, IF APPLICABLE, STATE AND LOCAL TAX CONSEQUENCES.

IV.  **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.  **Who May Vote or Object**

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 15**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that all classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a proof of claim in this case was [@@insert date].*

2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

holders of claims and equity interests that have been disallowed by an order of the

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 16**

Court;

holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

holders of claims or equity interests in unimpaired classes;

holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

holders of claims or equity interest in classes that do not receive or retain any value under the Plan;

administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.***

    4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

    **B.**    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2].

    1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 17**

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.  *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.  **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

D.  **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.  *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibit F.

2.  *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 18**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information in Exhibit G.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual cash flow, after paying personal living expenses and post-confirmation taxes, of $188,320. The final Plan payment is expected to be paid on or about July 2015, except for the thirty year mortgage on the house and lot in Santa Teresa, NM, assuming the Debtors gain possession of that property.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## V. EFFECT OF CONFIRMATION OF PLAN

### A. Discharge of Debtor

Discharge. Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### B. Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 19**

Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI. OTHER PLAN PROVISIONS

None

Dated: May 10, 2010

                                        DEBTORS

                                       /s/ Joe Monge
                                       Joe Monge

                                       /s/ Rosana Elena Monge
                                       Rosanna Elena Monge

ATTORNEYS FOR DEBTORS:

SIDNEY J. DIAMOND, P.C.

By: /s/ Sidney J. Diamond
    Sidney J. Diamond
    Texas Bar No.: 05803000
    3800 N. Mesa, Suite C-4
    El Paso, Texas 79902
    (915) 532-3327    (Voice)
    (915) 532-3355    (Fax)
    sidney@sidneydiamond.com

**DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT, Page - 20**